UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| NANTUCKET LANDING SOUTH CONDOMINIUM ASSOCIATION, INC., : : : Plaintiff, : : v. : : STATE FARM FIRE AND : CASUALTY COMPANY, : : Defendant. : | Case No. 3:23-cv-161 Judge Thomas M. Rose |

**ENTRY AND ORDER GRANTING DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. NO. 25)**

This action is before the Court on Defendant State Farm Fire and Casualty Company's Motion for Partial Summary Judgment (the "Motion") (Doc. No. 25). In this insurance dispute, Plaintiff, Nantucket Landing South Condominium Association, Inc. (the "Association"), has stated claims against Defendant, State Farm Fire and Casualty Company ("State Farm"), for breach of contract (Count I) and bad faith insurance practices (Count II). (*See* Doc. No. 1 at PageID 6-10.) By way of the present Motion, State Farm targets the Association's bad faith claim, arguing that State Farm was justified in denying the Association's underlying insurance claim. (Doc. No. 25 at PageID 203-04.) State Farm additionally submits that because the Association suffered no damages from State Farm's alleged bad faith, the Association's bad faith claim and prayer for punitive damages fail as a matter of law. (*Id.* at PageID 197-98.) For the reasons set forth herein, the Court **GRANTS** State Farm's Motion.

1

I.  **BACKGROUND**

At all times relevant to this action, the Parties were generally engaged in a typical insured/insurer relationship. (*See* Doc. No. 1 at PageID 2.) Briefly, the Association is a residential condominium association representing the collective interests of sixteen condominium buildings in Centerville, Ohio. (*Id.* at PageID 1.) State Farm is an Illinois insurance corporation, doing regular business in Ohio. (Doc. No. 9 at PageID 122-23.) State Farm sold a residential community association insurance policy to the Association, effective January 1, 2021, through January 1, 2022 (the "Policy"). (Doc. No. 1-1 at PageID 13.) By all accounts, that Policy provided coverage for accidental direct physical loss, including hail damage, to the Association's property. (Doc. No. 29 at PageID 669.)

The Parties' current dispute stems from a hail event occurring on June 18, 2021. (*See e.g.*, Doc. No. 33-1 at PageID 868.) Information provided by weather verification systems to the Association indicates that hail measuring .75 inches in size fell within three miles of the Association's property on June 18, 2021. (*Id.*) Hailfall measuring two inches in size was detected within ten miles of the Association's property on the same date. (*Id.*) By State Farm's admission, these reports lend themselves to the possibility that hail fell on the Association's property on June 18, 2021. (Doc. No. 29 at PageID 672.)

Despite the hailstorm occurring on June 18, 2021, the Association took no action regarding the alleged hail damage to its property until at least one year later. (*See* Doc. No. 30 at PageID 748.) In late Summer of 2022, the Association's board president, Mary Griffen ("Ms. Griffen") contacted Johnson Restoration, a local contracting company, on behalf of the Association. (*Id.*) At first, Ms. Griffen sought out Johnson Restoration to provide the Association with gutter cleaning services. (*Id.*) However, Ms. Griffen left this consultation with the understanding that

Johnson Restoration would be able to replace the Associations roofs, gutters, and other soft metals if the Association were to submit a successful insurance claim for hail damage caused by the June 18, 2021, storm. (*Id.*) The Association subsequently entered into a contract with Johnson Restoration. (*Id.*) The two entities agreed that Johnson Restoration would repair the Association's hail-damaged property if the Association's insurance claim was successful. (*Id.*) To-date, there is no evidence that the Association has paid Johnson Restoration for any repairs or other services related to hail damage allegedly caused on June 18, 2021.

In Fall of 2022, the Association hired public adjusters Bill Watterud ("Mr. Watterud") and William Cox ("Mr. Cox") to submit its insurance claim for hail damage to State Farm. (*See* Doc. No. 35 at PageID 1060.) Specifically, on November 16, 2022, Mr. Watterud submitted the Association's claim to State Farm along with a letter of representation and a request for a complete certified copy of the Policy. (Doc. No. 29 at PageID 674.) Although State Farm did not provide a certified copy of the Policy at that time, it did contact Mr. Watterud on November 22, 2022, advising that a third-party vendor would be performing an inspection of the Association's properties on State Farm's behalf. (*Id.* at PageID 676.) Hancock Claims Consultants ("Hancock"), State Farm's third-party vendor, completed its inspection of the Association's property on December 12, 2022, and determined that the Association had not suffered hail damage constituting accidental direct physical loss under the Policy. (Doc. No. 25-1 at PageID 220.) State Farm's assigned adjuster, Lee Alexander, then reviewed Hancock's findings and sent a letter denying the Association's claim on December 27, 2022. (*Id.* at PageID 218.)

Meanwhile, Johnson Restoration paid EFI Global, Inc. ("EFI"), to prepare a forensic engineering report assessing hail damage to the Association's properties. (*See* Doc. Nos. 30 at PageID 751-52; 33-1 at PageID 825.) After conducting a site inspection and analysis, EFI

3

concluded that the Association's properties suffered hail damage caused by the June 18, 2021, hailstorm. (*Id.* at PageID 825-29.) On January 19, 2023, EFI provided Mr. Cox with a written report detailing these findings. (*Id.* at PageID 824.)

Neither the Association nor its representatives contacted State Farm again until March of 2023. On March 21, 2023, Mr. Cox submitted the Association's insurance claim to State Farm for reconsideration. (Doc. No. 29 at PageID 679.) In doing so, Mr. Cox provided State Farm with EFI's engineering report and an updated proof of loss. (Doc. No. 35 at PageID 1066.) Additionally, Mr. Cox requested a tolling agreement to prevent the statute of limitations for insurance actions from expiring while the Parties attempted to resolve the Association's claim. (*Id.*) Upon State Farm's receipt of the EFI report and updated proof of loss, the Association's claim was assigned to independent adjuster Gregg Walters ("Mr. Walters"). (Doc. No. 31 at PageID 766.) In reviewing the claim, Mr. Walters allegedly reviewed notes in the claim file, the Hancock report from December of 2022, and the EFI report provided by Mr. Cox. (*Id.* at PageID 767, 775.) Though, at his deposition, Mr. Walters testified that he misread EFI's findings as concluding that the Association's properties suffered no hail damage from the June 18, 2021, storm. (*Id.* at PageID 775.)

Despite his assignment and review of the Association's claim, Mr. Walters was not particularly responsive to Mr. Cox's correspondences regarding the claim. (Doc. No. 35 at PageID 1066.) Between March 21, 2023, and April 18, 2023, Mr. Walters' responses to Mr. Cox's inquiries were sporadic, at best. (*See* Doc. No. 31 at PageID 768-72.) On April 18, 2023, Mr. Cox sent an email asking whether Mr. Walters was still working with State Farm at all. (*Id.* at PageID 771.) The same day, Mr. Walters called Mr. Cox to discuss the Association's claim. (*Id.* at PageID 772.) By the end of April, 2023, Mr. Walters sent a carbon copy of Lee Alexander's previous

4

denial letter to Mr. Cox. (*Id.* at PageID 773.) However, he did not inform Mr. Cox that State Farm was denying the Association's request for a tolling agreement and demand for appraisal. (*Id.* at PageID 774.) Mr. Cox did not receive this information from State Farm until sometime in May of 2023. (Doc. No. 35 at PageID 1067.) Lastly, Mr. Cox eventually received a certified copy of the Association's Policy, not from Mr. Walters, but from State Farm generally after contacting the Ohio Department of Insurance. (*Id.*)

The Association then submitted its Complaint in this action on June 12, 2023. (Doc. No. 1.) Following discovery, State Farm filed the instant Motion on May 10, 2024. (Doc. No. 25.) The Association filed Plaintiff's Response in Opposition to Defendant's Motion for Partial Summary Judgment on June 7, 2024 (Doc. No. 33), and State Farm timely filed its Reply on June 14, 2024 (Doc. No. 36). State Farm's Motion is currently ripe for review and decision.

**II.     STANDARD OF REVIEW**

   **A. Motion for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought" and that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, affidavits or sworn declarations, and admissions on file, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(a), (c).

The burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256

(1986). In opposing summary judgment, the nonmoving party cannot rest on its pleadings or merely reassert its previous allegations. *Id*. at 248-49. It also is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

A party's failure "to properly address another party's assertion of fact as required by Rule 56(c)" can result in the court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Additionally, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 255. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id*. at 255; *Matsushita*, 475 U.S. at 587; *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id*. The inquiry, therefore, "asks whether reasonable

6

jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict. *Id.*

When deciding on a matter of law, "[a] federal court sitting in diversity must apply the substantive law . . . of the state in which it sits." *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994) (citing *Klaxon Co. v. Stenor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021-22 (1941)); *Clutter v. Johns-Manville Sales Corp.*, 646 F.2d 1151, 1153 (6th Cir. 1981). To the extent that the state's highest court has not addressed the issue presented, the federal court must anticipate how the state's highest court would rule. *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)). Moreover, "[i]f the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it." *Clutter*, 646 F.2d at 1153.

### III. <u>ANALYSIS</u>

At present, State Farm only moves for summary judgment with respect to the Association's bad faith claim. (*See* Doc. No. 25 at PageID 197.) In particular, State Farm argues that it had reasonable justifications for its handling and ultimate denial of the Association's insurance claim. (*Id.* at PageID 200-04.) What's more, State Farm posits that even if it was not reasonably justified in its handling of the Association's claim, the Association's allegations of bad faith fail because it did not suffer any damages as a result of State Farm's alleged bad faith. (*Id.* at PageID 204-07.) By either token, State Farm contends that the Association's prayer for punitive damages in this case is for naught, as the Association may only recover punitive damages if it can first establish damages resulting from State Farm's bad faith. (*Id.* at PageID 207-09.)

In response, the Association submits that State Farm was so dilatory in handling the Association's claim that it constitutes bad faith. (Doc. No. 33 at PageID 819-21.) However, the Association does not directly respond to the argument that it cannot make out a cause of action for

7

bad faith due to a lack of damages. Rather, the Association appears to implicitly argue that its attorney fees in this matter are compensatory damages sufficient to survive State Farm's Motion. (*Id.* at PageID 818.)

The Court finds that the current Motion can be adjudicated on the issue of damages without considering whether State Farm was reasonably justified in its handling of the Association's insurance claim. As a fundamental matter, an insured's claim for bad faith is properly considered a tort under Ohio law. *Motorists Mut. Ins. Co. v. Said*, 590 N.E.2d 1228, 1232 (Ohio 1992) (quoting *Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1319 (Ohio 1983)). Moreover, for a plaintiff to recover damages under any cause of action, he must prove that he sustained "actual injury or damage." *Davison Fuel & Dock Co. v. Pickands Mather & Co.*, 376 N.E.2d 965, 968 (Ohio Ct. App. 1977) ("Proof of actual injury or damage is essential to recovery . . ."). Where a plaintiff's cause of action sounds in tort, such damages are compensatory in nature and are generally meant to represent "the economic loss of the person who is awarded damages in [a] tort action." Ohio Rev. Code § 2315.18(B)(1).

Pertinently, "'[a]n insurer who acts in bad faith is liable for those compensatory damages flowing from the bad faith conduct of the insurer and caused by the insurer's breach of contract.'" *Ohio Nat'l. Life Assur. Corp. v. Satterfield*, 956 N.E.2d 866, 874 (Ohio Ct. App. 2011) (quoting *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 402 (Ohio 1994)). Attorney fees, however, are only "properly awarded" when punitive damages have been awarded. *Parrish v. Machlan*, 722 N.E.2d 529, 533 (Ohio Ct. App. 1997) (citing *Charles R. Combs Trucking, Inc. v. Int'l. Harvester Co.*, 466 N.E.2d 883, 888 (Ohio 1984)). "Attorney fees may be awarded as an element of compensatory damages . . .." *Zoppo*, 644 N.E.2d at 402. Yet, an award of attorney fees does not compensate a plaintiff for an actual injury caused by the tort in question. *Digit. & Analog Design*

8

*Corp. v. North Supply Co.*, 590 N.E.2d 737, 742 (Ohio 1992). "Rather, the requirement that a party pay attorney fees . . . is a punitive [] remedy that flows from a jury finding of malice and the award of punitive damages." *Id.* (parenthetical omitted). Furthermore, a jury may not award punitive damages, even upon proof of actual malice, unless they have first determined that the plaintiff is entitled to compensatory damages. Ohio Rev. Code § 2315.21(C)(2).

In this instance, the Association has suffered no recoverable damages as a result of State Farm's alleged bad faith. As stated above, the Association does not substantively refute State Farm's argument regarding compensatory damages. Neither the current Motion nor the Association's Response are accompanied by evidence of damages the Association sustained as a result of State Farm's bad faith. It is of no consequence that the Association secured the services of Mr. Watterud, Mr. Cox, and EFI here. Mr. Watterud and Mr. Cox worked for the Association on a contingent fee basis and will only be paid if the Association is successful on its claim pursuant to the Association's Policy. (Doc. No. 30 at PageID 751-52.) Additionally, Johnson Restoration paid EFI for an engineering report. (*Id.*) Although EFI was retained on the Association's behalf, the Association cannot be considered damaged by the need to hire EFI absent any obligation to pay for the engineering firm's services. If such an obligation exists, it has not been made apparent to the Court.

The Association is left with nothing more than a claim for attorney fees as a damage flowing from State Farm's alleged bad faith. In short, the Association's attorney fees and litigation costs are not compensatory damages. Instead, the Association may only be awarded its attorney fees and other litigation costs as a punitive measure. A jury simply cannot determine that the Association is entitled to the exemplary damage of attorney fees unless the Association can first prove a separate compensatory damage. Allowing the Association to go forward on its bad faith

claim under these circumstances would subject the Court, the Parties, and the jury to the possibility that the Association could be awarded attorney fees without a finding of actual malice sufficient to justify punitive damages.  This result would be markedly contrary to Ohio law.  Therefore, the Court finds that the Association has not sustained an actual injury, as required to proceed on its bad faith claim against State Farm.

### IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant State Farm Fire and Casualty Company's Motion for Partial Summary Judgment (Doc. No. 25).  Count II of the Association's Complaint is accordingly **DISMISSED**.

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, July 8, 2024.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE